STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

WCA 05-1343


EVERGREEN PRESBYTERIAN MINISTRIES

VERSUS

BRENDA WALLACE


**********


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 2
PARISH OF CALCASIEU, NO. 03-07473
CHARLOTTE A. L. BUSHNELL, WORKERS' COMPENSATION JUDGE


**********


BILLY HOWARD EZELL
JUDGE


**********


Court composed of John D. Saunders, Oswald A. Decuir, and Billy Howard Ezell, Judges.


APPEAL DISMISSED AND CASE REMANDED.


Charles V. Musso, Jr.
Plauche, Smith & Nieset
P. O. Box 1705
Lake Charles, LA 70602
(337) 436-0522
Counsel for Plaintiff/Appellant:
Evergreen Presbyterian Ministries

Thomas E. Townsley
Attorney at Law
711 Pujo Street
Lake Charles, LA 70601
(337) 430-0994
Counsel for Secondary Defendant/Appellant:
Brenda Wallace

**EZELL, JUDGE**.

Both parties appeal the judgment of the workers' compensation judge (WCJ). The employer, Evergreen Presbyterian Ministries, appeals the WCJ's determination that Brenda Wallace is entitled to supplemental earnings benefits at a zero earning capacity. Ms. Wallace appeals several issues, including the fact that the WCJ ruled that she was not temporarily and totally disabled or totally and permanently disabled. She also appeals the WCJ's decision to sever the issue of improper payment of medical bills and her failure to address whether she was entitled to sympathetic therapy or penalties and attorney fees. Finding that there are issues to still be decided by the WCJ, we hold that the appeal is premature and remand the case for further proceedings.

## FACTS

Ms. Wallace was injured on May 9, 1996, while employed by Evergreen. At the time of the accident, Mrs. Wallace was entering a door while another employee was coming through the door from the opposite direction. Mrs. Wallace put her right hand up to keep the door from hitting her, and the force of the door injured her right hand and arm.

Evergreen referred Mrs. Wallace to a number of doctors over the years. Following the accident, Mrs. Wallace continued to complain of pain in her right hand and arm, so Evergreen initially sent her to Dr. Nathan Cohen, an orthopedic surgeon. Dr. Cohen was unsure of the etiology of Mrs. Wallace's symptoms and opined that in time they would subside.

Mrs. Wallace saw another orthopedic surgeon, Dr. William Foster, on two occasions in 1996. He requested EMG studies from Dr. Fayez Shamieh, a neurologist. The studies indicated mild right carpal tunnel syndrome. Dr. Foster also believed that Mrs. Wallace may have reflex sympathetic dystrophy (RSD). Dr. Foster

referred her to Dr. Kevin Gorin, a physical medicine and rehabilitation specialist, for pain management. Additionally, Dr. Foster referred Mrs. Wallace to Dr. James Dowd, a plastic surgeon, for carpal tunnel surgery. Mrs. Wallace indicated to Dr. Foster that Dr. Dowd refused to perform the carpal tunnel surgery because he thought it might make the RSD symptoms worse.

Dr. Gorin continued treating Mrs. Wallace through December 19, 1996. He performed several nerve blocks which gave her relief for several days, but symptoms reappeared. During this time she did not work from September 11, 1996 until December 2, 1996.

On January 23, 1997, Mrs. Wallace was seen by yet another orthopedic surgeon, Dr. Gregory Gidman, for an independent medical examination. His overall impression was that Mrs. Wallace did not have carpal tunnel but that she may have RSD. He noted that it was a very complicated case and that she was a very straightforward examinee. On his February 12, 1997 examination, Dr. Gidman observed the right hand was much cooler than the left hand. He suggested a series of stellate ganglion blocks to determine if she had RSD. He referred her to Dr. Gilmore to determine whether she had a vascular problem. At that time he recommended that she not work.

It was Dr. Charles Norris, a vascular surgeon, that eventually did examine Mrs. Wallace for a possible vascular problem. He opined that it was RSD and scheduled her for a stellate ganglion block. After three injections, Mrs. Wallace reported that her symptoms were worse. Dr. Gidman was certain at this point that Mrs. Wallace was suffering with RSD.

On referral from Dr. Gidman, Mrs. Wallace also saw Dr. James Domingue, a neurologist, in July 1997. At that time she complained of neck pain radiating through

2

the entire right arm in addition to swelling, coldness, blueness, and weakness of the right arm. He also believed she suffered from RSD and recommended a functional capacity evaluation and a return to work within her limitations.

Dr. Edgar Feinberg evaluated Mrs. Wallace on January 14, 1998, for pain. He also opined that Mrs. Wallace may have RSD.

As of May 20, 1998, Dr. Gidman opined that Mrs. Wallace had reached maximum medical improvement. He noted that she had seen a number of different pain specialists and had numerous stellate ganglion injections which never gave her much relief.

Dr. Frank Lopez saw Mrs. Wallace on September 3, 1998, at the request of F.A. Richard & Associates, the administrator of Evergreen's claims. Dr. Lopez is a physician specializing in physical medicine and rehabilitation with a special interest in pain management. He explained that RSD is inconsistent in its presentation and its course; usually there are quite a few people involved in the evaluation and treatment; and there are usually different opinions as to the severity and the actual treatment that would be most adequate. He further stated that the only tool to diagnose RSD is clinical evaluation. He explained that there are variable features in RSD that are not all present at the same time in any particular patient.

Regarding Mrs. Wallace's condition, Dr. Lopez testified that Mrs. Wallace has varied quite a bit on the presentation of symptoms since he has known her. At the time of trial, he had been treating her for the past seven years and was highly confident she has RSD. He opined that the right leg and foot problems she is now experiencing is associated with the RSD.

Dr. Lopez recommended that Mrs. Wallace return to some type of gainful employment if possible but also testified that pain is what prevents her from working

3

on a regular basis. He did recommend sympathetic therapy, or STS therapy. He explained that it is not a magical cure but does reduce some of the pain and gives the patient some relief with a decrease in medication usage. He stated that the ability to work would depend on what kind of change occurs with STS therapy.

F.A. Richard sought a medical opinion from an additional physical medicine rehabilitation specialist, Dr. Wayne T. Lindemann, who saw Mrs. Wallace on August 27, 2002. Dr. Lindemann had previously examined Mrs. Wallace on April 4, 1999, at which time he opined she was at maximum medical improvement and could return to work if vascular studies were unremarkable. As of the 2002 examination, Dr. Lindemann stated that there was evidence of symptom magnification and opined that she was at maximum medical improvement. He recommended a functional capacity evaluation with a return to work based upon the results of the FCE. He did not recommend STS therapy and continued to feel that she was at maximum medical improvement.

Dr. Gerald Nickerson, also a physical medicine and rehabilitation specialist, performed an independent medical examination of Mrs. Wallace on January 29, 2003, at the request of the Office of Workers' Compensation. He concluded that the subjective complaints were not consistent with the objective findings and that symptom magnification behavior was evident. He also opined that she had reached maximum medical improvement.

On March 18, 2003, Mrs. Wallace had a functional capacity evaluation at New Day Rehabilitation. The evaluation indicated that Mrs. Wallace demonstrated the ability to at least perform occasional sedentary lifting and that she should be able to return to some form of gainful occupation at that level. However, the report also indicated that her true maximal functional abilities are unknown because of her

4

testing results in unreliable data.

Karen Herron, a vocational rehabilitation counselor with F.A. Richard, was given Mrs. Wallace's file to find job leads in May 2003. In June 2003, Ms. Herron asked for Dr. Lopez's approval of positions of billing office clerk, collector, and receptionist for Mrs. Wallace. He did not approve any of these jobs. In November 2003, Ms. Herron found two jobs: (1) a bill and account collector; and (2) general board operator. Dr. Lopez refused to approve either job.

On March 4, 2004, Ms. Herron sent a letter to Mrs. Wallace notifying her of two job openings at Harrah's Casino. One was for a surveillance trainee and the other was for a monitor position. While Dr. Lopez was never given the opportunity to evaluate these jobs, Dr. Nickerson approved the surveillance trainee position. Mrs. Wallace testified that she did go check the job openings but she never got an offer.

Mrs. Wallace received compensation from the date of injury in the amount of $217.33 a week. On October 14, 2003, Evergreen and F.A. Richard filed a disputed claim for compensation disputing Mrs. Wallace's disability status. On May 19, 2004, her disability benefits were reduced to $61.34 a week based on a supplemental earnings benefits status. On July 2, 2004, Mrs. Wallace filed a reconventional demand. A trial was held on March 24, 2005. Judgment was signed on July 7, 2005.

The WCJ ruled that Mrs. Wallace was entitled to supplemental earnings benefits at zero earnings. The court also severed an issue of penalties and attorney fees that arose during the trial concerning payment of Dr. Lopez's bills below the fee schedule. Both parties appealed the judgment.

## PENALTIES AND ATTORNEY FEES

One of the issues raised by Mrs. Wallace is the fact that the WCJ severed the issue of penalties and attorney fees regarding payment of Dr. Lopez's bill to be

5

decided at a later time. Mrs. Wallace asks that we consider the issue and rule on it at this time.

In *Rhodes v. Lewis*, 01-1989 (La. 5/14/02), 817 So.2d 64, the supreme court affirmed a ruling by this court that an appeal in a workers' compensation matter was premature and that appeals from partial final judgments pursuant to La.Code Civ.P. art. 1915 were not applicable in workers' compensation cases. In making this decision the supreme court looked to La.R.S. 23:1310.5 which provides, in pertinent part:

> A. (1) Insofar as may be possible, all the evidence pertaining to each case, except as to noncontested matters, shall be heard by the workers' compensation judge initially assigned to the case. Upon the completion of such hearing or hearings, the workers' compensation judge shall make such order, decision, or award as is proper, just, and equitable in the matter.
>
> (2) Either party feeling aggrieved by such order, decision, or award shall, after receipt by certified mail of the order, decision, or award, have the right to take an appeal to the circuit court of appeal for the judicial district elected by the claimant upon the filing of the petition. The motion and order for appeal shall be filed with the district office assigned to handle the claim, which shall be responsible for preparation of the record for the appellate court.

The supreme court relied on its previous decision in *Smith v. UNR Home Products*, 614 So.2d 54 (La.1993), which relied upon La.R.S. 23:1310.5 in finding an appeal premature. The *Smith* court stated that the statute:

> [C]ontemplates an appeal from a final decision by the hearing officer upon completion of the required evidentiary hearing or hearings. Piecemeal appeals go counter to the new worker's compensation procedures which are designed to allow the hearing officer to "decide the merits of the controversy as equitably, summarily and simply as may be." LSA-R.S. 23:1317(A). The new procedures are designed to speed up the adjudicative process, not to prolong and complicate it by partial judgments and multiple appeals.

*Id.* at 54-5.

6

The law is clear, and we are bound to follow the supreme court's dictates, that a piecemeal appeal is not permissible in a workers' compensation case. The judgment of the Office of Workers' Compensation clearly establishes that issue of penalties and attorney fees is yet to be decided by it. As the second circuit noted in *Gajeske v. Integrated Electrical Services, Inc.*, 37,777 (La.App. 2 Cir. 10/29/03), 859 So.2d 896, in footnote four (*citing Rhodes*, 817 So.2d 64), a piecemeal appeal is not permissible when there are still issues involving penalties and attorney fees yet to determined. Until all issues have been decided in this case, this appeal is premature.

Accordingly, the appeal is dismissed. This matter is remanded to the Office of Workers' Compensation for a hearing on the remaining issues presented by this claim. Costs of this appeal are to be divided equally between the parties.

**APPEAL DISMISSED AND CASE REMANDED.**